## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 13 |
| | ) | |
| DI'AUNDRA FORBISH, | ) | No. 08 B 23466 |
| | ) | |
| | ) | |
| Debtor ) | | Judge Goldgar |

### MEMORANDUM OPINION

This matter is before the court for ruling on the objection of chapter 13 trustee Marilyn O. Marshall to confirmation of debtor Di'Aundra Forbish's plan. In her objection, the trustee complains that Forbish has miscalculated either her disposable income or her expense for federal tax liability and so proposes to pay less than all of her disposable income to her unsecured creditors. *See* 11 U.S.C. § 1325(b)(1)(B). For the reasons that follow, the objection will be sustained, and confirmation will be denied.

### 1. Facts

The facts are drawn from Forbish's petition, schedules, Official Form 22C, and plan, as well as from the parties' papers. No facts are in dispute.

Forbish filed her chapter 13 case on September 4, 2008. With her petition, she filed Form 22C on which she calculated her "current monthly income" as $1,930. That figure makes her a below-median debtor. On her Schedule I, Forbish listed $2,180 as her monthly gross income (including overtime) and $402 as her

withholding for income and payroll taxes, leaving net monthly income of $1779.[1] In

her plan, Forbish lists the $1,779 figure as her income rather than the $1,930 from

Form 22C. She also lists monthly expenses of $1,379, a figure taken from her

Schedule J. Subtracting $1,379 in expenses from $1,779 in income leaves $400

available for plan payments. Forbish therefore proposes in her plan to make

monthly payments of $400 for 60 months, producing a dividend to unsecured

creditors of 10%.

Forbish has a history of receiving large federal income tax refunds. From

2004 through 2007, Forbish received an average annual refund of nearly $4,400,

and she anticipates a refund of approximately $1,200 for 2008. In 2007, Forbish

received a $5,883 refund as a result of an earned income credit, and she had no tax

liability. The $1,200 refund she anticipates receiving for 2008 will also apparently

come about as the result of an earned income credit: on her Schedule C, Forbish

has claimed the refund as exempt based on an earned income credit of $3,325.

The trustee has objected to confirmation of Forbish's plan under section

1325(b)(1)(B) of the Code on the ground that Forbish is not dedicating all of her

projected disposable income to make payments to unsecured creditors. The trustee

argues that her anticipated tax refunds constitute disposable income that must be

devoted to the plan, and the 2008 refund is disposable income despite the claimed

---

[1]        Forbish's income differed on her Form 22C and her Schedule I because,
as discussed below, "current monthly income" shown on Form 22C is an average of a
debtor's monthly income in the six months before filing, *see* 11 U.S.C. § 110(10A),
whereas the income shown on Schedule I is the debtor's monthly income as of the
petition date.

exemption. Alternatively, the trustee argues that Forbish has overstated her expense for federal tax liability.

## 2. Discussion

The trustee's objection is well taken – and although the trustee casts her objection in the alternative, both parts are correct. Forbish is not devoting all of her "disposable income" income to the plan because she has miscalculated her income *and* miscalculated her tax liability expense.

Section 1325(b)(1)(B) of the Code provides that if the trustee or an unsecured creditor objects to confirmation of a debtor's plan, the plan cannot be confirmed unless it provides that all of the debtor's "projected disposable income" will be used to make payments to unsecured creditors. 11 U.S.C. § 1325(b)(1)(B). Before the 2005 enactment of BAPCPA, section 1325(b)(2) defined "disposable income" as "income received by the debtor and which is not reasonably necessary to be expended (A) for the maintenance or support of the debtor or a dependent of the debtor" and (B) for business expenses. Courts typically determined "income received" in this equation using the figures from the debtor's schedule I. *See In re Petro,* 395 B.R. 369, 373-74 (B.A.P. 6th Cir. 2008).

BAPCPA amended section 1325(b)(1) to define "disposable income" as "current monthly income received by the debtor" minus expenses that differ depending on whether the debtor's household income is above or below the median family income for the state. The term "current monthly income" (or "CMI") is new. Section 101(10A) defines CMI as "the average monthly income from all sources that

-3-

the debtor receives (or in a joint case the debtor and the debtor's spouse receive) without regard to whether such income is taxable income, derived during the 6-month period" before the case was filed.  11 U.S.C. § 101(10A).  CMI is calculated in Part I of a debtor's Form 22C; the debtor's Schedule I is no longer relevant to the disposable income calculation.  *See In re Spraggins*, 386 B.R. 221, 225 (Bankr. E.D. Wis. 2008).[2]

Because a debtor's income consists of CMI, it is not technically correct to say (as the trustee says) that a debtor's tax refund constitutes "income" that must be devoted to the plan.[3]  The reason is that CMI is calculated *before* withholding for taxes – indeed, before any kind of expense.  CMI consists of "pre-tax income from all sources, similar to 'gross income' under the Internal Revenue Code." *In re Curcio*, 387 B.R. 278, 283 (N.D. Fla. 2008); *see also Spraggins*, 386 B.R. at 226 (stating that "[c]urrent monthly income is gross income").  CMI therefore already includes a

---

[2]      Schedule I remains relevant, however, for determining a plan's feasibility. *See In re Girodes*, 350 B.R. 31, 37 & n.6 (Bankr. M.D.N.C. 2006)

[3]      A tax refund does represent income to the debtor – at least in the sense that it constitutes deferred payment of wages.  The debtor receives the refund only because he has had his employer withhold from his wages more than the amount necessary to pay taxes.  In essence, the debtor has used the tax-withholding scheme as a kind of savings account. *See In re Balcerowski*, 353 B.R. 581, 587 (Bankr. E.D. Wis. 2006) (noting that some people over-withhold "as a sort of forced savings mechanism").  But wages a debtor receives and then deposits into a savings account do not cease to count as income once deposited, as if they had never been received.  Courts holding that tax refunds are not income mean that the payment of the *refund itself* is not income. *See Spraggins*, 386 B.R. at 227 (stating that a tax refund "is not income, but a correction of the over-estimation of an expense").  They do not mean that the wages owed to the debtor but withheld are not income at the time they are withheld.

debtor's wages withheld for taxes, and if a debtor has used his CMI (as he must) in

coming up with his plan payments, there should be no need to require him to add in

his tax refund. *See Spraggins,* 386 B.R. at 226-27 (noting that the real question is

whether the debtor is "deducting a reasonable amount for withholding taxes on the

expense side of the equation," and that a debtor "could propose to keep her tax

refunds and include a deduction from current monthly income for payroll taxes

actually incurred").

For the same reason, Forbish's exemption of her anticipated 2008 refund

based on her earned income credit has no effect on the disposable income

calculation. The claimed exemption does not matter because BAPCPA resolved the

dispute over whether exempt assets are included in disposable income. *See In re

Waters,* 384 B.R. 432, 436 (Bankr. N.D. W. Va. 2008); *In re Royal,* 397 B.R. 88, 101-

02 (Bankr. N.D. Ill. 2008). After BAPCPA, the question depends, not on claims of

exemption, but on the Code's definitions of CMI and "disposable income." The only

exclusions from disposable income are the exclusions in section 101(10A) and

section 1325(b)(2) (and the additional two in sections 547(b)(7)(B) and 1322(f)). As

the court in *Royal* correctly held, earned income credits are not an excluded form of

income. *Royal,* 397 B.R. at 93-94.

As for the tax credit itself, CMI again is not tax-dependent: it includes

"income from all sources . . . without regard to whether such income is taxable

income." 11 U.S.C. § 110(10A). CMI is in essence pre-tax gross income, determined

without regard to the effects of the tax laws. *Curcio,* 387 B.R. at 283. So it makes

no difference that Forbish's refund results from her earned income credit rather

than from over-withholding.  It makes no difference whether she receives a refund

at all.  The sole question for purposes of determining CMI is what income she

received from all sources (except those sources statutorily excluded) during the six

months pre-petition.

Here, Forbish calculated her "disposable income" under section 1325(b) using

the $1,779 figure from on line 16 of Schedule I.  She should have used the higher

CMI figure of $1,930 from her Form 22C.[4]  Because Forbish failed to calculate her

"disposable income" using CMI, the trustee is correct that she has understated her

income.

The trustee is also correct that Forbish has exaggerated her tax liability

expense.  As a below-median debtor, Forbish calculates her disposable income by

subtracting from CMI "amounts reasonably necessary to be expended . . . for the

maintenance or support of the debtor or a dependent of the debtor" as well as

certain other expenses not relevant here.  11 U.S.C. § 1325(b)(2)(A)(i).  Before

BAPCPA, courts generally determined a debtor's expenses using the debtor's

Schedule J, *Petro*, 395 B.R. at 373-74, and that continues to be the practice after

BAPCPA for below-median debtors, *Royal*, 397 B.R. at 93; *In re Williams*, 394 B.R.

---

[4]      Courts are deeply split on whether the six-month prepetition average
applies if the debtor's income has changed since the six-month period, *compare, e.g.,
Maney v. Kagenveama (In re Kagenveama)*, 541 F.3d 868 (9th Cir. 2008) (holding
changes irrelevant), *with In re Frederickson*, 545 F.3d 652 (8th Cir. 2008) (holding
changes relevant), *cert. denied sub nom. Frederickson v. Coop*, ___ U.S. ___, 126 S.
Ct. 1630 (2009), but no such change has been asserted here.

550, 564 (Bankr. D. Colo. 2008).

But a debtor's expenses are not limited to the expenses shown on Schedule J. Section 1325(b)(2) nowhere mentions Schedule J, and a debtor is entitled to deduct expenses that do not appear on Schedule J as long as they are "reasonably necessary" for the support of the debtor or his dependent. *See In re Short,* No. 08-11224, 2008 WL 5751873, at *3-4 (Bankr. N.D. Ohio Sept. 11, 2008); *In re Simpson,* No. 08-21251, 2008 WL 2705606, at *2 (Bankr. E.D. Wis. July 3, 2008) (noting that expenses for below-median debtors depend on "Schedule J and those reasonably necessary expenses not included on Schedule J"). One such expense is a debtor's actual tax liability. *Spraggins,* 386 B.R. at 226; *Short,* 2008 WL 5751873, at *4 ("At a minimum, a debtor's payroll taxes and social security taxes are reasonably necessary expenses to be deducted from CMI").

In this case, Forbish was entitled to calculate her disposable income by subtracting her actual tax liability from CMI as a reasonably necessary expense. The problem is that she subtracted more than her actual liability. Because Forbish based her disposable income calculation on Schedule I, she deducted the $402 figure on line 4(a) representing "payroll deductions" for "payroll taxes and social security" – in other words, her withholding. Given the $1,200 refund she expects, however, $402 is an overstatement of her actual monthly expense for tax liability. If the $402 figure on her Schedule I can be trusted, Forbish had a total of $4,824 withheld for taxes in 2008. She therefore has an actual tax liability of only $3,624 (the $4,824 withheld minus the $1,200 refund) and so a monthly expense of $302, not

$402.

Because Forbish both underestimated her income and overestimated her expense for actual tax liability, her plan fails to devote all of her "disposable income" to the payment of unsecured creditors and fails to comply with section 1325(b)(1).  The trustee's objection to confirmation will be sustained.

### 3. Conclusion

For these reasons, the objection of trustee Marilyn O. Marshall to confirmation of debtor Di'Aundra Forbish's chapter 13 plan is sustained.  Confirmation is denied.  A separate order will be entered in accordance with this opinion.

Dated:   May 5, 2009

_____
A. Benjamin Goldgar
United States Bankruptcy Judge